KNOWLSON v. FRIAR.

1. APPEAL AND ERROR—FINDINGS OF FACT—TRIAL—NON-JURY CASE.
   Upon appeal from findings and judgment of the circuit
   court, sitting without a jury, under conflicting testimony
   the findings of fact made by the court will be disturbed
   only if they are erroneous or indicate that the court was
   influenced by improper motives or misunderstood the
   evidence.

2. CONTRACTS—ACTIONS—BUILDING AND CONSTRUCTION CONTRACT—
   TRUSTS—PRINCIPAL AND SURETY.
   Where plaintiff, who was one of the subordinate con-
   tractors in constructing an apartment house, secured an
   order from the principal contractor upon the disbursing
   agent of the parties, who declined to accept the order,
   although plaintiff claimed that he assured plaintiff that
   the amount would be paid, and where the trial court
   found that in fact no such assurance was made and that
   the agent had disbursed all funds in his hands entrusted
   to him by the owner up to the entire contract price, the
   agent, or trustee, was discharged from any liability upon
   evidence tending to support the finding of the circuit
   court and establishing that he had paid out the agreed
   consideration in the contract and had no funds in his
   hands with which to pay plaintiff's claim.

Error to Kent; Perkins, J. Submitted January 7,
1915. (Docket No. 47.) Decided March 17, 1915.

Assumpsit in justice's court by Abram Knowlson
against James Friar for money due plaintiff. From
a judgment for plaintiff, defendant appealed to the
circuit court. Judgment for defendant. Plaintiff
brings error. Affirmed.

*Peter J. Danhof,* for appellant.

*M. L. Dunham, H. M. Dunham,* and *J. M. Dunham,*
for appellee.

MOORE, J. This case was commenced in justice's court against defendant Friar and one Martin Stephan.

"The plaintiff declares orally upon the common counts in assumpsit, especially upon agreement for money and materials to his damages $300 or under, the defendant pleads orally the general issue."

The case was discontinued as to defendant Stephan. From a judgment in favor of the plaintiff, the defendant Friar appealed the case to the circuit court. From a judgment in favor of the defendant, the case is brought here by writ of error.

The case was tried in the circuit court by the judge without a jury. Findings of fact and law were made as follows:

"(1) On March 5, 1906, one Martin Stephan entered into a written contract with one John Leff to build a house for said Leff for the sum of $3,800, and said contract provided that the defendant, James Friar, would handle the moneys and pay all bills, and defendant Friar did not sign this contract.

"(2) I also find that, for the protection of the said John Leff, Martin Stephan gave a bond with defendant as surety to protect the said John Leff from any liens, levies, and attachments for labor and material going into the construction of said house and for the faithful performance of such work by the said Martin Stephan.

"(3) I further find that during the progress of this work, when the said Martin Stephan required money to meet his bills, he would inform defendant Friar thereof, who would obtain such money from John Leff, pay it to Martin Stephan, who would pay such bills, taking receipts therefor, and turn them over to defendant Friar; these receipts showing the amounts so paid by Stephan and the purposes for which such payments were made.

"(4) I find that, after the making of the contract between Stephan and Leff, Martin Stephan subcontracted the mason work for said building to Pembrook & Handlin, for $350, and Pembrook & Handlin, desir-

184 Mich.—30.

ing to obtain material therefor from the plaintiff, Abram B. Knowlson, and also $100 in cash gave to said Knowlson an order upon said Martin Stephan reading as follows:

" 'GRAND RAPIDS, MICH., 4/26/06.
" 'Martin Stephan,
  " '468 Lincoln St.,
    " 'City.
" 'Pay A. B. Knowlson or order, $350.00 as follows: $200.00 on completion of wall and balance on completion of our mason contract.

[Signed]  " 'PEMBROOK & HANDLIN.'

"This order was accepted by Martin Stephan in writing across its face as follows: 'Accepted, Martin Stephan, Contractor.' This order was written in plaintiff's office and by himself, and, after the acceptance of this order by said Stephan, plaintiff took it to defendant Friar and asked him to O. K. it, or accept it. Defendant refused to accept said order and it was taken away by plaintiff. The materials and $100 cash were furnished Pembrook & Handlin by plaintiff after such visit, the $100 on the same day.

"(5) I further find that on or about May 15, 1906, Martin Stephan took to and deposited with defendant $200 for plaintiff and gave plaintiff an order on Friar for that amount, which plaintiff presented to Friar and received the $200 and was applied by plaintiff upon the $350 indebtedness to him from Pembrook & Handlin, and the accepted order of Martin Stephan of date April 26, 1906.

"(6) And I also find that defendant Friar had no knowledge of the purpose of this deposit and payment by Stephan or of Knowlson's application of the same, or that it had any relation to the contract between Leff and Stephan.

"(7) And I further find that, during the construction of the building by Stephan for Leff, defendant Friar paid in full $3,800 for labor and material going into the construction of said building upon orders from said Stephan, and that upon the completion of said building there were still some outstanding and unpaid bills for labor and material going into the construction of said building, including the balance of $150 due plaintiff from Pembrook & Handlin.

"(8) I find that thereafter Pembrook & Handlin filed a lien on this building for $350, and that said lien failed because it was not filed within the statutory period.

"(9) I further find that thereafter Knowlson commenced an action in justice's court against this defendant, James Friar, and Martin Stephan jointly, on the order in question to recover the unpaid $150 thereon, and that later the case was discontinued as to Stephan and continued as against defendant alone, and which cause was appealed from justice's to this court.

"(10) I also find as a question of fact that at the time plaintiff presented the $350 order, accepted by Martin Stephan, he requested defendant Friar to accept the same, and that defendant refused to accept it, never did accept it, and never promised to pay the same or any part of it, and that plaintiff took said order away with him and has ever since had it in his possession and under his control.

"(11) I further find that the claim of $150 now sought by plaintiff to be recovered from defendant Friar was the primary obligation of Pembrook & Handlin, that by its acceptance by Martin Stephan it became a primary obligation against Pembrook & Handlin and Martin Stephan, and that defendant Friar at no time promised to pay the same in writing.

"(12) I further find as a matter of fact that James Friar, the defendant, was the disbursing agent of Leff to the extent of $3,800, and that he was to disburse that amount from time to time as required by Martin Stephan, and that from time to time defendant Friar obtained different amounts to meet the orders and requirements of the said Martin Stephan, and that at no time was the said $3,800, or any great part of it, in the hands of the said defendant, James Friar, for disbursement; that the *modus operandi* concerning such $3,800 was that when the contractor, Martin Stephan, desired money, he would inform defendant Friar as to the amount he wanted and which sum would be obtained from time to time by defendant Friar from the said John Leff and paid over to said Stephan or upon his order, and that the said James Friar disbursed the entire sum of $3,800, being the full contract price and paying for labor and

material upon this building and upon orders of the said Martin Stephan.

"Conclusion of Law.

"From the foregoing facts, I conclude that the plaintiff failed to establish by a preponderance of the evidence a primary and independent contract between plaintiff and defendant for the payment of said $150 or any part thereof and to recover which this action was brought, and for that reason plaintiff is not entitled to recover, and a judgment should be entered for the defendant of no cause of action, with costs to be taxed."

The first assignments of error relate to the admission of testimony. Without going into detail, it may be said that the testimony related to what was said and done by participants in the transaction who were also witnesses at the trial. We think the testimony competent.

One of the most important questions is: What occurred when the order of Pembrook & Handlin, which was accepted by Mr. Stephan, was presented to Mr. Friar? It is agreed defendant declined to accept the order in writing, but it is claimed by plaintiff that he said the order was good, that it was unnecessary for him to O. K. it, that he would pay it. There is testimony supporting this claim. This claim is denied by defendant. He insists he refused to accept or pay it, and there is other testimony than his own supporting his contention.

It has long been the law in this State that a finding of fact by the court sitting without a jury is equivalent to a verdict, and will be disturbed only when it is clearly erroneous, or shows that the judge was influenced by improper motives or misunderstood the evidence. See the many cases cited in the Michigan Digest Annotated, vol. 1, p. 303.

It has already appeared that the testimony was in sharp conflict, and it may be significant that the order was not accepted when it would have been the easy

and natural thing to do if Mr. Friar agreed to pay it. The finding of the circuit judge upon this question must control.

We cannot present the remaining question calling for consideration better than to quote from the brief of counsel:

"Defendant's liability was fixed, primarily, when he signed the bond and contract, and accepted the trust and entered upon its performance. He did agree not only in writing to pay plaintiff's order for the mason work on this job, but for all other bills for labor and materials. He further agreed in writing that these bills would not be paid by him until they were O. K.'d by Stephan. When the latter accepted the order in writing, defendant could not legally neglect or refuse to pay it. He could not deny liability by refusing to O. K. it, as is claimed by him in his testimony. *  *  *

"The defendant by the terms of the contract was a disbursing agent and banker, and accepting the trust imposed upon him, the agreement on his part to pay all bills for labor and materials furnished and used upon said building was an original and primary obligation and not collateral. Defendant was the disbursing agent or banker for the parties. The money by express language was put in his hands impressed with a trust, viz.: It was in his hands to pay bills. This made it a primary and original obligation on his part.

"Plaintiff contends that the signing of the bond with the contract attached and to which it expressly related and referred, together with defendant's acceptance of the trust therein created and entering upon the performance of it, made the defendant primarily liable to pay the bills for labor and materials. These bills became due when defendant had notice that they were approved and accepted by Stephan. After such notice of approval and acceptance of bills by Stephan, defendant could not refuse or neglect to pay such bills and orders."

This contention makes it necessary to consult the contract and bond. For some reason the contract is

not contained in the record.  There is only an excerpt from it as follows:

"Specifications of work to be done and materials to be furnished in the erection and construction of a four-family tenement flat to be built at No. 115 Scribner street, Grand Rapids, Michigan, for Mr. John Leff according to plans and specifications.

"The contractor is to provide all labor and materials of every description necessary for the erection and completion of above mentioned work according to drawings and as herein specified, all work to be done in a neat, substantial, workmanlike manner.  *  *  *

"Contractor will be obliged to show all bills and receipts for labor and material paid.

"The contractor hereby agrees to have building completed in four months after signing this agreement, if not completed the said contractor forfeits five dollars per day.

"James Friar will handle all moneys and pay all bills.

[Signed]  "MARTIN STEPHAN, Contractor.
"J. LEFF."

It will be noticed that the amount which was to be paid Mr. Stephan for the erection of the building is not stated in what we have quoted, but it is agreed that the amonnt was $3,800.  It also appears that Mr. Friar did not sign this contract.  Suppose it be assumed that Mr. Friar was trustee in handling the funds.  Must it not also be assumed that, when Mr. Leff paid the full consideration he was to pay under the contract, he would be discharged of further liability?  If this is true, would it not follow as to his trustee?  The court has found that the full consideration of the contract, $3,800, was paid.  This finding is borne out by the record.

But it is said the contract and the bond should be read together, and when so read the liability is established.  The bond is as follows:

"Know all men by these presents, that we, Martin Stephan, as principal, and James Friar, as surety,

both of the city of Grand Rapids, county of Kent, State of Michigan, are held and firmly bound unto John Leff of the same place, in the sum of thirty-eight hundred dollars ($3,800.00) lawful money of the United States of America to be paid to the said John Leff or to his certain attorney, heirs, executors, administrators or assigns to which payment well and truly to be made we bind ourselves, our heirs, executors and administrators, and each and every one of them, firmly by these presents.

"Sealed with our seal, dated the 5th day of March, one thousand nine hundred and six.

"The condition of this obligation is such, that if the above-bound Martin Stephan, his executors, administrators, or assigns, shall in all things stand to and abide by and well and truly keep and perform the covenants, conditions and agreements mentioned and contained in an instrument or agreement this day entered into between himself, and the said John Leff on his, the said Martin Stephan's part to be kept and performed at the time and in the manner and form therein specified, and to the satisfaction of the said John Leff, for the construction of a certain building on the property known as 115 Scribner street in the city of Grand Rapids, Michigan, copy of said agreement is hereunto attached, and also pay for all labor performed and material used in the construction of said building, and preserve the said John Leff free and harmless from any liens or levies for or on account of such labor performed or material furnished. Then the above obligation shall be void; otherwise to remain in full force and effect.

"Signed, sealed, and delivered in presence of:
"MARTIN STEPHAN.    [L. S.]
"JAMES FRIAR.    [L. S.]"

It will be noticed that the only parties to the bond are Mr. Leff, Mr. Stephan, and Mr. Friar. We cannot from any aspect of the case reach the conclusion that the liability of Mr. Friar to the plaintiff has been established.

Judgment is affirmed.

BROOKE, C. J., and MCALVAY, KUHN, STONE, OSTRANDER, BIRD, and STEERE, JJ., concurred.