# STATE OF MICHIGAN

# COURT OF APPEALS

GIARMARCO, MULLINS & HORTON, PC,

Plaintiff-Appellee,

v

DAVID P. POSTILL and SPE UTILITY
CONTRACTORS, LLC,

Defendants-Appellants.

UNPUBLISHED
April 17, 2018

No. 337028
Macomb Circuit Court
LC No. 2016-001080-CB

Before: SAWYER, P.J., and HOEKSTRA and MURRAY, JJ.

PER CURIAM.

Defendants, David P. Postill ("Postill"), and SPE Utility Contractors, LLC ("SPE"), appeal as of right the February 2, 2017 order granting summary disposition in favor of plaintiff, Giarmarco, Mullins & Horton, PC, a law firm, regarding a dispute over liability for unpaid attorney's fees. On appeal, defendants argue that the trial court erred in granting summary disposition because plaintiff failed to show that defendants were contractually liable to pay for legal services rendered to defendants and nonparties to this litigation, Blue Water Motor Repair, LLC, Diversified Power, Inc., and RES Collections, LLC ("nonparties"), and that Postill could not be held individually liable for legal services rendered to the nonparties because in each instance he requested that legal services be rendered to the nonparties, he was acting as an agent for disclosed principals. We affirm in part and reverse in part.

## I. PERTINENT BACKGROUND

On September 20, 2010, SPE and plaintiff entered into a written contract for legal services. The contract expressly provided that SPE "retains [plaintiff] to represent [SPE] on the following matter or matters, subject to the terms and conditions of this agreement" and solely listed the "Moriarty Litigation" as the only "Subject Matter of Representation[.]"[1] The contract listed Postill, who has an ownership interest in SPE, as the primary contact person for SPE. The contract was signed by Andrew T. Baran, on behalf of plaintiff, and Postill on behalf of SPE.

---

[1] According to the only evidence submitted by defendants below, the Moriarty Litigation resolved on February 10, 2011, after being dismissed by St. Clair Circuit Court.

-1-

Sometime after plaintiff was retained regarding the Moriarty Litigation, Postill asked plaintiff to provide legal services to Postill, individually, and to other companies owned or controlled by Postill, including SPE and nonparties to this litigation. More specifically, plaintiff eventually appeared as counsel for Blue Water Repair, LLC, in *Adam Spaulding v Blue Water Motor Repair, LLC*, as counsel for Diversified Power, Inc., in *William Spaulding v Diversified Power, Inc*, as counsel for RES Collections, LLC, in *RES Collections, LLC v Adam Spaulding*, as counsel for Postill in *Dalton, Tomich & Pensler v David Postill and Lorie Postill*, and finally plaintiff provided various other legal services at the request and direction of Postill for Postill, SPE, and the three nonparties listed above. Plaintiff would then submit monthly billing statements to defendants for the legal work rendered. SPE made partial payments for the services rendered, regardless of whether the legal services were provided to Postill, SPE, or the nonparties. However, the full balance was never paid. No separate written retainer agreements were made for these additional services beyond the Moriarty Litigation.

In total, defendants owe plaintiff approximately $57,779.60. That amount stems from the following: in regard to *William Spaulding v Diversified Power, Inc*, plaintiff billed defendants for $18,880.65, of which $10,000 has been paid by SPE, leaving an unpaid balance of $8,880.65; in regard to *Dalton, Tomich & Pensler v David Postill and Lorie Postill*, plaintiff billed $1,597, none of which has been paid; in regards to *Adam Spaulding v Blue Water Motor Repair*, plaintiff billed defendants $23,719.91 of which $10,000 was paid by SPE, leaving an unpaid balance of $13,719.91; in regard to *RES Collections, LLC v Adam Spaulding*, plaintiff billed defendants $1,074, none of which has been paid; and finally, there was a "commercial litigation" account, where plaintiff billed defendant approximately $122,853.54 of which $90,345.50 was paid by SPE, leaving an unpaid balance of $32,608.04. The billing statements in those matters were addressed to "David P. Postill, [SPE] Utility Contractors, LLC, 4400 Dove Road, Port Huron, [Michigan] 48060." The billing statements indicate that the payments were only made by SPE, and not by Postill or by the nonparties. After several unsuccessful attempts to collect the outstanding balance from defendants, plaintiff sued defendants to recover the outstanding balance plus interest, costs and fees alleging breach of contract and unjust enrichment.

Eventually, plaintiff filed a motion for summary disposition arguing that plaintiff was entitled to summary disposition under MCR 2.116(C)(9) because defendants had not raised a valid and legitimate defense against plaintiff's claims, and also that plaintiff was entitled to summary disposition under MCR 2.116(C)(10) because defendants had not demonstrated that there was a genuine issue of material fact regarding their liability for the unpaid legal fees. Plaintiff also submitted various documentary evidence to the trial court, including billing statements, emails between plaintiff and Postill or his other legal counsel, Cheryl Cameron, who was also the resident agent for SPE and the nonparties, regarding the services rendered, the written contract regarding the Moriarty Litigation, the affidavits of Baran, and checks paid by SPE to plaintiff.

Defendants filed a joint opposition that asserted that they were not proper parties to this action because the legal services at issue were rendered to the nonparties because there was no contractual agreement between defendants and plaintiff where defendants agreed to be directly responsible for paying for the legal services rendered to the nonparties. Nor did defendants guarantee the payment obligation of the nonparties for legal services rendered by plaintiff to the nonparties. Finally, defendants asserted that Postill could not be held individually liable because

he was acting as an agent for the nonparties, which were disclosed principals. The only evidence submitted below on behalf of defendants indicated that the Moriarty Litigation had been resolved.

The trial court ultimately issued an opinion and order granting plaintiff's motion for summary disposition. More specifically, the opinion indicated that

> [d]efendants do not challenge that the [legal] services in question were provided or that the amount billed for the [legal] services was appropriate. Rather, [d]efendants argue that summary disposition should be denied because many of the services in question ultimately benefited [nonparties], not [d]efendants. However, [p]laintiff alleges in this case that while some of the services were provided in connection with [nonparties], the services were provided at the request of [d]efendants and that the agreement was that [d]efendants would be responsible for paying for the services. Defendants have provided no evidence whatsoever to contradict Mr. Baran's testimony or the other evidence [p]laintiff submitted. The [c]ourt is convinced that based on Mr. Baran's testimony, the fact that all of the bills were sent to [d]efendants, and the fact that [SPE] has paid for a portion of the services at issue, there is no question of fact that [d]efendants contractually agreed to be liable for payment for the services [p]laintiff provided that are at issue in this case. As a result, the [c]ourt is satisfied that [p]laintiff's motion for summary disposition must be granted.

In reaching its decision, the trial court relied on Baran's affidavits, plaintiff's billing records, and three checks submitted by SPE.

## II. ANALYSIS

### A. STANDARD OF REVIEW

Decisions on motions for summary disposition are reviewed de novo. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). Plaintiff moved for summary disposition below under MCR 2.116(C)(9), which tests the sufficiency of defendant's pleadings, *Village of Dimondale v Grable*, 240 Mich App 553, 564; 618 NW2d 23 (2000), and also under MCR 2.116(C)(10), which tests the factual sufficiency of a claim, *Maiden*, 461 Mich at 120. However, while the trial court did not explicitly specify the particular subrule of MCR 2.116 under which it granted plaintiff's motion for summary disposition, "in light of the trial court's statements at the motion hearing regarding" the documentary evidence submitted by plaintiff, "it is apparent that the trial court considered documentation beyond the pleadings and therefore ruled on the motion under MCR 2.116(C)(10)." *McJimpson v Auto Club Group Ins Co*, 315 Mich App 353, 357; 889 NW2d 724 (2016). Consequently, this Court will review the trial court's decision regarding summary disposition under MCR 2.116(C)(10). *Id.*; *Cuddington v United Health Servs, Inc*, 298 Mich App 264, 270; 826 NW2d 519 (2012) (noting that when a party moves for summary disposition on multiple grounds, but the trial court does not specify on what grounds it granted the motion, this Court will treat the motion as having been granted under MCR 2.116(C)(10), if the trial court considered documentary evidence beyond the pleadings).

Under a motion brought pursuant to MCR 2.116(C)(10), the court evaluates the documentary evidence and other materials submitted by the parties in the light most favorable to the nonmovant. *Maiden*, 461 Mich at 120. Consequently, the court must draw all reasonable inferences in favor of the nonmovant. *Dextrom v Wexford Co*, 287 Mich App 406, 415-416; 789 NW2d 211 (2010). "A trial court must grant the motion if it finds 'no genuine issue as to any material fact' and determines that 'the moving party is entitled to judgment or partial judgment as a matter of law.' " *Mlive Media Group v Grand Rapids*, __ Mich App __, __; __ NW2d __ (2017) (Docket No. 338332); slip op at 2, citing and quoting MCR 2.116(C)(10). "There is a genuine issue of material fact when reasonable minds could differ on an issue after viewing the record in the light most favorable to the nonmoving party." *Allison v AEW Capital Mgt, LLP*, 481 Mich 419, 425; 751 NW2d 8 (2008). "Circumstantial evidence can be evaluated and utilized in regard to determining whether a genuine issue of material fact exists for purposes of summary disposition." *Bergen v Baker*, 264 Mich App 376, 387; 691 NW2d 770 (2004). However, in determining whether a factual dispute exists, the court is not required to independently search the entire record, but it is required to consider the documentary evidence identified by the parties in contesting the motion. *Barnard Mfg Co v Gates Performance Engineering, Inc*, 285 Mich App 362, 377; 775 NW2d 618 (2009). Finally, in reviewing the trial court's decision, this Court's "review is limited to the evidence that had been presented to the [trial] court at the time the motion was decided." *Innovative Adult Foster Care, Inc v Ragin*, 285 Mich App 466, 475-476; 776 NW2d 398 (2009).

## B. DIRECT CONTRACTUAL LIABILITY

Defendants argue that the trial court erred in granting summary disposition because the evidence submitted by plaintiff failed to demonstrate that defendants agreed to pay for legal services rendered to the nonparties. Under Michigan law "[a] valid contract requires five elements: (1) parties competent to contract, (2) a proper subject matter, (3) legal consideration, (4) mutuality of agreement, and (5) mutuality of obligation." *Bank of America v First American Title Ins Co*, 499 Mich 74, 101; 878 NW2d 816 (2016) (quotation marks and citation omitted). "Most of the elementals above reflect the fact that the parties to a contract must have 'a meeting of the minds on all essential terms of a contract.' " *Calhoun Co v Blue Cross Blue Shield Mich*, 297 Mich App 1, 13; 824 NW2d 202 (2012), citing and quoting *Burkhardt v Bailey*, 260 Mich App 636, 655; 680 NW2d 453 (2004). Determining whether a meeting of the minds exists is judged by an objective standard, which looks to the express words of the parties and their visible acts and not their subjective states of mind. *Calhoun Co*, 297 Mich App at 13. If a meeting of minds does not exist between the parties, then a contract does not exist between the parties. *Id*.

Defendants do not dispute the first and second elements, but instead only the legal consideration, the mutuality of agreement, and mutuality of obligation. Consequently, we will only address the disputed elements in analyzing defendants' argument on this issue.

"To have consideration there must be a bargained-for exchange; there must be a benefit on one side, or a detriment suffered, or service done on the other." *Innovation Ventures v Liquid Mfg*, 499 Mich 491, 508; 885 NW2d 861 (2016) (quotation marks, citation, and brackets omitted). However, courts do not generally inquire into the sufficiency of consideration. *Innovation Ventures*, 499 Mich at 508. In the ordinary case, consideration will "take the form of the payment of legal tender" for "at least one side of the contract[.]" *Calhoun Co*, 297 Mich App

at 13. Mutuality of agreement means that there is mutual assent, or a meeting of the minds, on all material and essential terms of the contract. *Sanchez v Eagle Alloy Inc*, 254 Mich App 651, 665; 658 NW2d 510 (2003). A meeting of the minds can be found from performance and acquiescence in that performance. *Id*. at 666. Mutuality of obligation is satisfied if there is consideration supporting the contract. *Hall v Small*, 267 Mich App 330, 334-335; 705 NW2d 741 (2005).

Where a contractual provision is unambiguous, that provision will be deemed reflective of the intent of the parties, and thus, will be construed and enforced as written. *Coates v Bastian Brothers, Inc*, 276 Mich App 498, 503; 741 NW2d 539 (2007). Because the original written contract between plaintiff and SPE was expressly limited to the Moriarty Litigation, the terms of that contract do not extend to the legal services rendered beyond that litigation, and thus, cannot serve as a basis for contractual liability of defendants beyond services rendered regarding that litigation. By extension, plaintiff's argument that the terms of the original written contract extended beyond the Moriarty Litigation to also cover the legal services rendered to the nonparties is inapt.

However, the documentary evidence submitted by plaintiff shows that there was a separate contract formed between plaintiff and SPE for the services rendered to the nonparties. The affidavits of Baran indicate that defendants requested plaintiff to render various legal services to the nonparties, which were owned and or controlled by Postill, and which plaintiff subsequently billed defendants for as services were rendered. Plaintiff also attached various documents showing that plaintiff appeared on behalf of the nonparties in litigation. Plaintiff further attached billing statements addressed to "David P. Postill, [SPE] Utility Contractors, LLC, 4400 Dove Road, Port Huron, [Michigan] 48060," which indicated that plaintiff had billed defendants for: $18,880.65 in regards to *William Spaulding v Diversified Power, Inc*, of which $10,000 has been paid by SPE; had billed defendants for $23,719.91 in regards to *Adam Spaulding v Blue Water Motor Repair* of which $10,000 was paid by SPE, had billed defendants for $1,074 in regards to *RES Collections, LLC v Adam Spaulding* of which none has been paid; had billed defendants for $1,597 in regards to *Dalton, Tomich & Pensler v David Postill and Lorie Postill* of which none has been paid; and, finally, had billed defendants for a general "commercial litigation" account for approximately $122,853.54 of which $90,345.50 was paid by SPE. Plaintiff also attached various client ledger reports that showed an overall summary of how much plaintiff had billed defendants for, what had been paid, and how much was left outstanding. Taken together, and in the light most favorable to defendants, the evidence submitted by plaintiff shows that there was a contract between plaintiff and SPE. The payments made by SPE for various legal matters performed for the nonparties coupled with the other evidence submitted by plaintiff shows that there was a mutually agreed upon bargained-for-exchange, that is, the rendering of legal services to the nonparties by plaintiff in exchange for payment by SPE. This is so even though it appears no payments were made in regard to *RES Collections, LLC v Adam Spaulding* because the general "commercial litigation" account indicates that defendants were billed for the preparation of a complaint for *"RES v Adam Spauld[ing]"* on March 4, 2011. Consequently, payment on the general account indicates assent to that billing because "[w]here there is no specific recitation of separate consideration for a [service rendered], but it is part of a larger contract involving multiple promises, the basic rule of contract law is that whatever consideration is paid for all of the promises is consideration for each one[.]" *Hall*, 267 Mich App at 334 (quotation marks and citation omitted). Moreover,

simply because the legal services rendered involved the nonparties does not change this conclusion because "[i]t is well established that one may assume original [contractual] liability by a direct promise to pay for services to be rendered to another in the future." *Schier, Deneweth & Parfitt, PC v Bennett*, 206 Mich App 281, 282; 520 NW2d 705 (1994). Thus, because the documentary evidence submitted by plaintiff demonstrated that there was a contract between the parties, plaintiff has carried its initial burden under MCR 2.116(C)(10).

After the moving party carries its initial burden, the burden shifts to the opposing party to establish that a genuine issue of disputed material fact exists. *Barnard Mfg Co*, 285 Mich App at 369. Once shifted, "the nonmoving party may not rely on mere allegations or denials in pleadings, but must go beyond the pleadings to set forth specific facts showing that a genuine issue of material facts exists." *Lowrey v LMPS & LMPJ, Inc*, 500 Mich 1, 7; 890 NW2d 344 (2016) (citations omitted). "If the nonmoving party fails to present documentary evidence establishing the existence of a material factual dispute, the motion is properly granted." *Id*. (citations omitted). Defendants have not submitted any documentary evidence to rebut this conclusion in regard to SPE. Instead, the only piece of evidence submitted by defendants shows that the Moriarty Litigation ended in February 2011, which is insufficient to demonstrate a genuine issue of fact regarding the services rendered to the nonparties. Consequently, plaintiff is entitled to summary disposition against SPE for payment stemming from the services rendered to the nonparties.

On the other hand, plaintiff is not entitled to summary disposition against Postill, as an individual, regarding payment for the services rendered to the nonparties. Unlike with SPE, there is no indication that Postill made any payments to plaintiff. Consequently, it is not clear from the submitted evidence, when viewed in the light most favorable to Postill, that he agreed to pay for the services rendered to the nonparties. Indeed, it is telling that the bills were submitted to Postill at SPE, and only SPE made payments. Given that this Court must consider the facts in the light most favorable to Postill, the fact that only SPE made payments suggests there is a question of fact whether Postill agreed to be bound even though according to Baran's affidavits, he was directing plaintiff to perform work regarding the nonparties. That is, it may be that Postill was directing the work be done on behalf of SPE, which would explain why only SPE made payments. However, contrary to defendants' assertion, it would not be appropriate for this Court to reverse and subsequently direct the trial court on remand to enter summary disposition against plaintiff regarding Postill's liability concerning the nonparties because there is a question of fact regarding whether Postill agreed to be bound.

Finally, plaintiff is entitled to summary disposition against Postill in regard to *Dalton, Tomich & Pensler v David Postill and Lorie Postill*, because Postill conceded liability on that matter below in his motion for summary disposition and at the motion hearing. It also bears noting that Postill has done so again in his brief on appeal. However, plaintiff is not entitled to summary disposition against SPE regarding *Dalton, Tomich & Pensler v David Postill and Lorie Postill* because there is a question of fact whether SPE agreed to pay for any of the services rendered in that matter. Even though, the billing statements for the "commercial litigation" account include events to indicate that plaintiff billed defendants for services related to the *Dalton* matter, such as an event on March 31, 2011, where plaintiff billed defendants for attendance at the depositions of "D. and L. Postill," an event on April 18, 2011, where plaintiff billed defendants for a telephone conversation with opposing counsel in the *Dalton* matter, and

an event on April 22, 2011, where plaintiff billed defendants for preparing affidavits "denying the account stated" in the *Dalton* matter, given Postill's concession of liability, it raises a question of fact regarding whether SPE also agreed to be liable. That is, it is unclear whether SPE agreed to pay or only had made incidental payments because the *Dalton* matter was inappropriately lumped in with the other litigation matters involving the nonparties under the "commercial litigation" account. Consequently, plaintiff is not entitled to summary disposition against SPE regarding the *Dalton* matter.[2]

## C. POSTILL'S LIABILITY AS AN AGENT OF THE NONPARTIES

Postill argues that summary disposition was inappropriate because he was acting as an agent of the nonparties, which were disclosed principals, and he had not otherwise agreed to be bound. We agree because the evidence submitted by plaintiff, when viewed in the light most favorable to Postill, indicates that there exists a genuine issue regarding whether he was acting as an agent for the nonparties.

Generally speaking, "an agent who contracts with a third party on behalf of a disclosed principal is generally not liable to the third party in the absence of an express agreement to be held liable." *Howard & Howard Attorneys, PLLC v Jabbour*, 311 Mich App 524, 526; 880 NW2d 1 (2015). The evidence submitted by plaintiff indicates that plaintiff performed various legal services for the nonparties at the request of Postill. More specifically, Baran's second affidavit indicates that "Postill and/or [defendants' attorney Cheryl Cameron] asked [plaintiff] to provide legal services to Postill and to other companies owned or controlled by Postill . . . and to [Postill] as an individual," and that plaintiff was in regular contact with Postill and his attorney regarding these matters. However, Baran's second affidavit also states the following:

> 9. Because Postill authorized [plaintiff] to work on these various matters, and because [defendants' attorney] was involved in the work done in connection with these matters, they were persons involved in the discussions concerning the withdrawal of [plaintiff] as counsel for [RES] Collections, LLC, Diversified Power, Inc., and Blue Water Repair, LLC. Postill confirmed that he wanted [plaintiff] to withdraw as counsel for these entities, and Postill and [defendants' attorney] were the representatives of these entities who were notified of our withdrawal. See, Exhibit G.

Moreover, defendants point to an email sent to Postill from plaintiff that stated, "You instructed us to cease work on your companies' behalf." Viewed in the light most favorable to Postill, the above suggests that he was acting as an agent of the nonparties because if Postill was acting merely as an individual regarding the nonparties, he would not have had power to cancel the

---

[2] We do not address the statute of frauds argument raised by defendants in regard to the contract being a void guarantee agreement because it was not reduced to writing given that plaintiff has explicitly stated it is not proceeding on a theory that there was a guarantee agreement and defendants acknowledged in their reply brief that if that is the case, then there is no issue involving a void guarantee agreement.

representation of nonparties by plaintiff. *Uniprop, Inc v Morganroth*, 260 Mich App 442, 448; 678 NW2d 638 (2004) (noting that "[a] characteristic of an agent is that he is a business representative. His function is to bring about, modify, accept performance of, or terminate contractual obligations between his principal and third persons."). Nor would it make sense for plaintiff to send notification of withdrawal to the nonparties through Postill. Further, the above also indicates that plaintiff was aware of the identities of the nonparties. Consequently, summary disposition is inappropriate because the above documentary evidence suggests that Postill may have been acting as an agent of the nonparties. However, the above does not conclusively resolve the issue because it may also well be the case that when Postill initially procured the services for the nonparties, he was acting individually, but later when he cancelled the services he may have been acting on behalf of the nonparties. In other words, it is possible given the evidence submitted that Postill may have acted in different capacities at different times throughout his interactions with plaintiff. Hence, there exists a genuine issue of material fact regarding whether Postill was acting as an agent of disclosed principals, and if so at what times.

## III. CONCLUSION

The trial court properly granted plaintiff's motion for summary disposition in regard to finding SPE liable for fees stemming from services rendered to the nonparties, but erred in granting summary disposition against SPE in regards to fees stemming from legal services rendered in *Dalton, Tomich & Pensler v David Postill and Lorie Postill*. The trial court properly granted plaintiff's motion for summary disposition against Postill regarding fees stemming from legal services rendered in *Dalton, Tomich & Pensler v David Postill and Lorie Postill*, but erred in granting summary disposition against Postill regarding fees stemming from services rendered to the nonparties given that there is a question of material fact regarding whether Postill agreed to pay.

The trial court also erred in granting summary disposition against Postill regarding fees stemming from the legal services rendered to the nonparties because there exists a genuine issue concerning whether Postill was acting as an agent of the nonparties.

Affirmed in part and reversed in part. No costs, neither party having prevailed in full.

/s/ David H. Sawyer
/s/ Joel P. Hoekstra
/s/ Christopher M. Murray